E-FILED
Monday, 02 November, 2026 01:37:11 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | | |
|---|---|---|
| JONATHAN I. KELLY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 4:26-cv-4050-SLD |
| | ) | |
| JUSTIN MAYER, Warden,[1] | ) | |
| | ) | |
| Respondent. | ) | |

ORDER and OPINION

Before the Court is Petitioner Jonathan I. Kelly's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Doc. 1) and Motion for Stay and Abeyance (Doc. 19). For the reasons below, the Court DISMISSES Petitioner's Petition with prejudice, DENIES Petitioner's Motion for Stay and Abeyance (Doc. 19) and DECLINES to issue a certificate of appealability.

## I. BACKGROUND[2]

On April 1, 2028, Jenni McGruder was shot to death outside a pub in Galesburg, Illinois. Kelly was subsequently charged in Knox County Circuit Court with three counts of first-degree murder, one count of aggravated discharge of a firearm, and one count of unlawful possession of a weapon by a felon (UPWF). *People v. Kelly,* 2018CF176 (Knox Cnty. Cir. Ct.); *People v. Kelly*, 2022 IL App (3d) 190375-U, ¶ 4 (Oct. 25, 2022). He was convicted by a jury and sentenced to a total of 65 years of imprisonment. Kelly argues his is entitled to relief due to

[1] Respondent reports that Justin Mayer is the new Warden of Western Illinois Correctional. Accordingly, he is substituted for Brittany Greene as Respondent. *See* Fed. R. Civ. P. 25(d).

[2] The facts are taken from the undisputed facts in Respondent's Response (Doc. 16), which are consistent with the official records from Petitioner's state court proceedings. (Doc. 17). *See* 28 U.S.C. § 2248 ("The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true."). The factual determinations of the state court are presumed to be correct, unless a petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

multiple constitutional violations that he argues occurred from before and during trial and at sentencing.

**A. Pretrial Motions**

Before trial, the State filed a motion *in limine*, seeking to introduce evidence of Kelly's prior conviction as proof for UPWF charge. *See Kelly*, 2022 IL App (3d) 190375-U, ¶ 5. While defense counsel did not object to introducing the evidence for that purpose, he used the opportunity to state an objection to proceeding with the UPWF charge "wherein there is no weapon that's going to be produced at trial and I believe that the prejudicial effect of proceeding with that in conjunction with the murder trial outweighs the probative value." *Id*. The State then characterized this argument as a motion to dismiss the UPWF charge, which the defense did not dispute. *Id*. The court then granted the motion *in limine* and denied the motion to dismiss. *Id.*

**B. Jury Selection**

During jury selection, the trial court denied Kelly's motions to strike three prospective jurors for cause. Kelly used preemptory challenges to strike these people from the jury. The trial court also denied a motion to strike a fourth juror, Patricia Walton, but Kelly declined to use one of his remaining five preemptory challenges, and she was selected as a juror. After selecting the jury, defense counsel filed a motion to discharge the jury panel. (Doc. 17-12 at 76). He argued the panel was not a panel of Kelly's peers because the forty-two person panel only had two African Americans, and Kelly is African American. *Id.* at 79, 81. The Court denied the motion. *Id.* at 85.

**C. Trial**

At trial, the State presented multiple witnesses who inculpated Kelly as the shooter. Leonard McGee and Douglas Bailey testified that they were at a pub on April 1, 2028, when they

saw Kelly get into a fight with Garret Mixon. After the fight, Kelly left the pub. McGee and Bailey went outside and saw Kelly drive up in a white van, get out, and fire two or three shots into a crowd of people.

Michael McGruder also testified that he and Jenni McGruder were walking with a friend, Quincy Morrison, to Morrison's car when Michael heard gunshots. Jenni was fatally shot in the head. Michael saw Jenni lying on her stomach and then saw a man run past with a handgun. Michael was unable to identify the shooter in a lineup. Morrison also heard gunshots and then saw a man run past with a handgun. Morrison identified the armed man as Kelly (with whom Morrison was familiar). As Kelly ran past, he told Morrison that he "better not say anything."

McGee testified that, after the shooting, he got into his car and picked up Kelly, which he admitted was "dumb." Kelly asked McGee for a ride out of town, and McGee drove him to a hotel in Iowa. During the drive, Kelly told McGee that "he couldn't believe that they provoked him."

Finally, the state introduced into evidence a certified copy of Kelly's prior conviction for unlawful possession of a controlled substance, to prove Kelly was a felon for purposes of the UPWF charge.

Kelly moved for a mistrial because the State had failed to disclose that McGee told them Kelly made a statement to McGee about being provoked. The trial court denied the motion. Kelly also moved for a mistrial because, after the close of evidence on one day of trial, as the jury was leaving, at least one juror saw Kelly being placed in a holding cell. The trial court denied this motion as well.

At the jury instruction conference, the State submitted a modified jury instruction stating that, to find Kelly guilty of murder, the jury had to find, *inter alia*, that Kelly intended to kill, or

knew his acts created a strong probability of killing Jenni McGruder "or another." The prosecutor argued that the "or another" language "fit the transferred intent situation" in the case. Defense counsel objected that the language did not mirror the indictment, but the court overruled the objection and gave the instruction.

The jury found Kelly guilty of first-degree murder, UPWF, and aggravated discharge of a firearm. During sentencing, the trial court merged the aggravated discharge of a firearm conviction into the murder conviction. The trial court then sentenced Kelly to consecutive terms of 10 years in prison for UPWF and 65 years in prison for murder, which included a 25-year mandatory enhancement for personally discharging a firearm during the murder.

**D. Direct Appeal**

Kelly's conviction and sentence were affirmed on appeal. *People v. Kelly*, 2022 IL App (3d) 190375-U. He raised six grounds for relief: (1) the trial court erred in denying his motion for a mistrial based on the States' failure to disclose Kelly's statement to McGee that he was provoked, *id.* ¶ 30; (2) the trial court erred in failing to sever the UPWF and murder charges, *id.* ¶ 34; (3) defense counsel was ineffective for failing to request an accomplice witness jury instruction in light of McGee's testimony, *id.* ¶ 39; (4) the prosecutor committed misconduct when he told the jury that McGee would testify that Kelly said he "fucked up," but McGee's testimony did not include this statement, *id.* ¶ 45; (5) the cumulative errors at trial require reversal, *id.* ¶ 52; (6) the trial court erred at sentencing when it (a) violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), when it imposed a 25-year mandatory firearm enhancement, when the jury's verdict only made findings supporting a 15-year enhancement, (b) considered an improper aggravating factor, and (c) imposed an excessive sentence, *id.* ¶¶ 55–71.

Relevant here, for Kelly's first claim, the Illinois Appellate Court agreed with the State's concession that nondisclosure of McGee's testimony about Kelly's statement violated Illinois discovery rules, but that no mistrial was warranted as the undisclosed statement was merely cumulative. *Id.* ¶¶ 30, 32. The Illinois Appellate Court found that Kelly's second claim—that the trial court erred by failing to sever the UPWF and murder charges—was forfeited when Kelly failed to move to sever the charges or renew the issue in his post-trial motion. *Id.* ¶¶ 36-37. The court also held that Kelly forfeited his *Apprendi* claim (his third issue), as Kelly conceded, and that he could not show plain error to overcome his forfeiture. *Id.* ¶¶ 57-59. The appellate court held that Kelly's claims that the trial court considered an improper aggravating factor in sentencing and imposed an excessive sentence were meritless and affirmed his conviction. *Id.* ¶¶ 61–65, 67–71.

Kelly filed a Petition for Leave to Appeal (PLA) with the Illinois Supreme Court. He renewed his claims, but with regards to his first claim, he argued that the State's failure to disclose before trial that he made the statement to McGee about being provoked violated Illinois Supreme Court 412 but did not argue that this discovery error violated any constitutional rights. The Illinois Supreme Court denied the PLA in March 2023. *People v. Kelly*, 210 N.E.3d 769 (Ill. 2023).

**E. State Postconviction Petition**

Kelly next filed a state postconviction in December 2023, with numerous arguments. *People v. Kelly*, 2025 IL App (4th) 240484-U, *appeal denied*, 273 N.E.3d 802 (Ill. 2025). The trial court dismissed Kelly's postconviction petition. *Id.* ¶ 24. On appeal, Kelly's appointed postconviction counsel moved to withdraw because he could find no meritorious issues. Kelly did not file a response.

Relevant here, in his petition, Kelly again raised the issues about the State's failure to disclose the statement he made to McGee and the trial court's failure to sever the UPWF and murder charges. *Id.* ¶ 33. The Illinois Appellate Court found these issues were barred from further review by *res judicata*. *Id.* He also raised various issues regarding the jury selection process, including four which he repeats here: (1) the jury venire pool lacked racial diversity and African American representation and the court erred in denying his motion to strike the jury panel on this basis; (2) the court erred when it refused to strike certain jurors for cause and forced him to use preemptory challenges; (3) juror Patricia Walton was biased; and (4) his presumption of innocence was violated when jurors saw him being placed into a holding cell in handcuffs. *Id.* ¶ 34. The Illinois Appellate Court found that these issues were forfeited because he failed to raise them in his direct appeal. The Illinois Appellate Court also found that Kelly had forfeited his argument that the trial court erred by issuing the jury instruction on transferred intent because it "constructively amended" the indictment and allowed the jury to find him guilty based on an uncharged theory.

Kelly also argued his counsel on direct appeal was ineffective for failing to raise certain issues on direct appeal, including for failing to raise that the trial court erred by issuing the jury instruction on transferred intent, failed to raise the issue of severance of the charges against Kelly. *Id.* ¶ 38. The Illinois Appellate court found that counsel was not ineffective for failing to raise the first issue on direct appeal because it was meritless, *id.* ¶ 48, and that counsel did raise the second issue on appeal, *id.* ¶ 69.

Accordingly, the Illinois Appellate Court granted postconviction appellate counsel leave to withdraw and affirmed the dismissal of Kelly's postconviction petition. *Id.* ¶ 73. Kelly filed a PLA in the Illinois Supreme Court, renewing his claims from his postconviction petition, which

the Illinois Supreme Court denied in November 2025. *People v. Kelly*, 273 N.E.3d 802 (Ill. 2025).

**F. Federal Habeas Petition**

Kelly filed this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) on February 24, 2026, raising the following eight grounds for relief:

(1) The State failed to disclose a McGee's witness statement in violation of Illinois discovery laws (doc. 1 at 5);

(2) The trial court erred when it allowed the State to amend the jury instruction to add transfer intent as theory of guilt, which differed from the indictment and amounted to a constructive amendment (*id*. at 6);

(3) The jury pool contained too few African Americans, so the jury was not of his peers (*id*. at 8);

(4) The trial court erred in failing to remove several jurors for cause, forcing Kelly to use preemptory challenges (*id*. at 10);

(5) A juror was biased where juror said she was not sure if she could be fair and impartial (*id*. at 12);

(6) Kelly's presumption of innocence was denied when two jurors saw him being put into a holding cell and handcuffed (*id*. at 13);

(7) The trial court erred when it failed to sever UPWF charges from his first degree murder charges (*id*. at 15);

(8) during sentencing the trial court (a) violated *Apprendi* when it imposed a 25-year mandatory firearm enhancement and (b) the trial court "improperly used" unspecified "aggravating factors" and imposed a sentence that was "excessive for a reckless act," (*id*. at 17).

Respondent filed a response in opposition (Doc. 16), arguing Kelly's grounds for relief were either procedurally defaulted or not cognizable in federal habeas review. Kelly filed a reply arguing he could show cause and prejudice for failing to raise a new ground: "his constitutional challenges concerning Illinois Pattern Instruction Criminal 7.02 the denial of separate murder verdict sheets." (Doc. 18 at 1). He relies on *People v. Smith*, 233 Ill. 2d 1 (2009), in support of

his claim, which he argues makes "denying separate verdict sheets over defense objection is mandatory reversal." *Id.* at 2.

. (Doc. 18). Kelly also filed a Motion for Stay and Abeyance (Doc. 19), arguing he had unexhausted claims that were potentially meritorious for which he was seeking state review in the form of a successive postconviction petition under 725 ILCS 5/122-1(F) in the state circuit court. The only claim mentioned in this motion was also ground two. The Court notes that no postconviction petition was filed in his criminal case in the state circuit court. This Order now follows.

## II. LEGAL STANDARDS

Federal courts can grant writs of habeas corpus "only on the ground that [a petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

However, prior to considering the merits of a petitioner's claims, federal courts "must consider which claims have been procedurally defaulted." *Id.* There are two types of procedural default: First, procedural default occurs "where the state court declines to address a petitioner's federal claims because the petitioner did not meet state procedural requirements[.]" *Id.* (quoting *Thomas v. Williams*, 822 F.3d 378, 384 (7th Cir. 2016)). In order for procedural default to apply in this circumstance, the state court's rejection of a federal claim based on a procedural rule must be "both independent of the federal question and adequate to support the judgment." *Clemons v. Pfister*, 845 F.3d 816, 819 (7th Cir. 2017). Second, "[a] state prisoner can procedurally default a federal claim if he fails to 'fairly present' it 'throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings,'" *Clemons*, 845 F.3d at 819 (quoting *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014)), and

"it is clear that those courts would now hold the claim procedurally barred," *Perruquet v. Briley,* 390 F.3d 505, 514 (7th Cir. 2004). Accordingly, "[s]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," which in Illinois requires the petitioner to "include his claims in a petition for leave to appeal to the Illinois Supreme Court." *Snow*, 880 F.3d at 864 (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845–46 (1999)).

"Procedural default may be excused . . . where the petitioner demonstrates either (1) 'cause for the default and actual prejudice' or (2) 'that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Snow*, 880 F.3d at 864 (quoting *Thomas*, 822 F.3d at 386). "[T]he miscarriage of justice exception applies only in the rare case where the petitioner can prove that he is actually innocent of the crime of which he has been convicted." *Wilson v. Cromwell*, 69 F.4th 410, 421 (7th Cir. 2023) (internal citations omitted).

If the state court does address the merits of a petitioner's claim, the Court may only grant habeas relief if "the state court's 'decision' was 'contrary to, or involved an unreasonable application of, clearly established Federal law,' or 'was based on an unreasonable determination of the facts in light of the evidence presented' in state court." *Klein v. Martin*, 607 U.S. 213, 220 (2026) (quoting 28 U.S.C. § 2254(d)). This standard acts as a "limited safeguard" that "protects against 'extreme malfunctions' in the state courts' adjudication of constitutional claims" and requires federal courts "to give the 'benefit of the doubt' to" state court merits decisions. *Id.* (citations omitted).

"[A] decision is deemed "contrary to" clearly established federal law if the state court reached 'a conclusion opposite to that' of the Supreme Court on a legal matter [ ] or if the state court arrived at an outcome in direct contradiction to a 'materially indistinguishable' case

decided by the Supreme Court." *Gambaiani v. Greene,* 137 F.4th 627, 632 (7th Cir. 2025) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). A state court decision is an "unreasonable application of" clearly established federal law if the state court "identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Coleman v. Hardy,* 690 F.3d 811, 814 (7th Cir. 2012) (quoting *Williams v. Taylor*, 529 U.S. 362, 407 (2000). However, this showing is more than "clear error;" instead a petitioner must "establish that the state court 'blunder[ed] so badly that every fairminded jurist would disagree' with the decision." *Klein,* 607 U.S. at 596 (quoting *Mays*, 592 U.S. at 392). In conducting this review, courts must "look to the last reasoned state court decision to decide the merits of the case, even if the state's supreme court then denied discretionary review." *Pierce v. Vanihel*, 93 F.4th 1036, 1044 (7th Cir. 2024) (internal quotations omitted).

## III. DISCUSSION

### A. Motion to Stay and Abey

As an initial matter, Kelly has filed a motion (Doc. 19), asking the Court to stay and abey these federal habeas proceedings so that he may attempt to exhaust claims in state court. In appropriate cases, the Court has discretion to stay "mixed" petitions—those with both exhausted and unexhausted claims—pending resolution of the unexhausted claims in state court. *Rhines v. Weber*, 544 U.S. 269, 278 (2005). The Court should not grant a stay and abeyance if the petitioner has not shown good cause, if "the unexhausted claims are plainly meritless, or [if] a petitioner has engaged in abusive litigation tactics or intentional delay." *Yeoman v. Pollard*, 875 F.3d 832, 837 (7th Cir. 2017) (citing *Rhines*, 544 U.S. at 277–78).

Here, Kelly states he has four unexhausted claims: (1) a denial of sperate verdict forms on the murder counts, which was a "mandatory reversible error" under Illinois law[3]; (2) "improper transferred intent instruction" that was given "without evidentiary support in the record violated 14th Amendment due process"; (3) a violation of Illinois' one-act, one crime rule, which requires that a sentence to be entered on the most serious charge when a general verdict is returned on multiple counts arising from a single act; and (4) the sentencing judge erred by sentencing Kelly on a "mutually exclusive mental state" because the judge characterized the conduct on the record as "reckless", but gave him a 65-year sentence for "knowing murder." (Doc. 19 at 3). Kelly argues his good cause for failing to bring these claims is that his trial counsel, direct appeal, and postconviction appeal counsel were all ineffective. *Id*. at 2. Further, Kelly argues that he has acted diligently and has not engaged in intentionally dilatory tactics because "upon receiving Respondent's answer identifying procedural default and exhaustion issues, [Kelly] immediately moved for this stay to initiate a successive post-conviction petition . . ." *Id*. at 4.

However, the problem for Kelly is that his claims are not simply unexhausted, they are procedurally defaulted. Kelly already attempted and failed to raise two of these claims (the transferred intent issue and the sentencing issue) in his first state postconviction petition. Moreover, all of these issues were fully available to him during his direst appeal and postconviction petition. And, to the extent that he is arguing his procedural default should be excused, his arguments fail. Even if Kelly's trial counsel and direct appeal counsel were ineffective for failing to raise them, Kelly still could have raised them in his state postconviction petition along with his other ineffective assistance of counsel claims. Further, there is no

[3] Kelly has also raised this as a new claim in his reply brief that he argues he has cause and prejudice for failing to bring earlier. The Court addresses these arguments below.

constitutional right to postconviction counsel, so errors of postconviction counsel that led to the default of "claims in state court cannot constitute cause to excuse the default in federal habeas." *Coleman,* 501 U.S. at 757; *see also Crutchfield v. Dennison*, 910 F.3d 968, 971 (7th Cir. 2018) (holding that the exceptions to *Coleman* as announced in *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413, 429 (2013), do not apply to ineffective assistance of counsel claims brought in Illinois).

Accordingly, since the claims are procedurally defaulted, the Court does not find good cause exists to stay the case. Further, because Kelly could have raised these claims at least by the time of his postconviction petition, the Court finds that Kelly did not act diligently in raising these claims. Finally, while the Court takes no position on whether Kelly would be successful under state law in a motion successive postconviction, the Court notes that he has not yet filed one (and needs no permission from this Court to file anything in state court), further belying his claim that he acted diligently. Therefore, Kelly's motion to stay and abey (Doc. 19) is denied.

**B. Ground 1 (Failure to Disclose McGee's Witness Statement) is Noncognizable and Procedurally Defaulted**

In his Petition, Kelly first argues he is entitled to relief because the State failed to disclose McGee's witness statement in violation of Illinois discovery laws. (Doc. 1 at 5). As Kelly frames the issue here and in his PLA on direct appeal, his claim is only that the State's failure to disclose violated Illinois discovery law, not federal law. Framed as a state law issue, the claim is not cognizable in federal habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). Moreover, to the

extent Kelly sought to bring a federal constitutional claim, his claim is procedurally defaulted because he failed to raise it through one complete round of state court review.

The Court notes that in his postconviction petition, Kelly argued his direct appeal counsel was ineffective for failing to raise a *Brady v. Maryland*, 373 U.S. 83 (1963), claim on direct appeal concerning McGee's testimony that Kelly said he was provoked. *Kelly*, 2025 IL App (4th) 240484-U, ¶ 67. The Illinois Appellate Court found that appellate counsel had raised the issue on direct appeal within the discovery violation context, and concluded that "appellate counsel cannot be ineffective for failing to raise an issue which was, in fact, raised." *Id*. The Court does not agree that when appellate counsel raised a state law discovery violation that it raised a *Brady*-claim. Nonetheless, even if Kelly intended to bring a *Brady* claim here and could otherwise overcome the procedural default hurdles, his claim is plainly meritless. In *Brady,* the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. A successful *Brady* claim has three components: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). However, "there is no general constitutional right to discovery in a criminal case, and *Brady*, which addressed only exculpatory evidence, did not create one." *Gray v. Netherland*, 518 U.S. 152, 168 (1996) (cleaned up); *see also United States v. Cruz-Velasco*, 224 F.3d 654, 665 (7th Cir. 2000). Here, Kelly only complains about the state's failure to disclose inculpatory evidence, of which *Brady* is not concerned.

Accordingly, the Court denies claim one as either noncognizable in federal review, as procedurally defaulted, and/or as meritless.

**C. Kelly's Grounds 2–6 Are Procedurally Defaulted for Adequate and Independent State Law Grounds.**

Next, grounds 2 (jury instruction issues), ground 3 (issues with the jury pool), 4 (forcing Kelly to use preemptory challenges to strike jurors), ground 5 (bias of juror Patricia Walton), and 6 (juror bias for seeing Kelly in a holding cell and handcuffed), are all procedurally defaulted as well. Kelly only raised these grounds of relief in his postconviction petition and the Illinois Appellate Court found them forfeited because he did not raise them in his direct appeal. *Kelly*, 2025 IL App (4th) 240484-U, ¶ 34. When a state court declines to address a prisoner's federal claims because the prisoner failed to meet a state procedural requirement, that ruling is an independent and adequate state law ground, and the petitioner's claim is procedurally defaulted. *Davila v. Davis*, 137 S. Ct. 2058, 2062 (2017). An Illinois court's rejection of claims as forfeited because they could have been, but were not, raised on direct appeal, is an adequate and independent state law ground. *Sturgeon v. Chandler*, 552 F.3d 604, 611 (7th Cir. 2009).

For Grounds 2 and 5, the Court notes that in his state postconviction petition Kelly also argued that his direct appeal counsel was ineffective when he failed to raise the issue of the constructive amendment of the indictment and his claim that juror Patricia Walton was biased on direct appeal. *Kelly*, 2025 IL App (4th) 240484-U, ¶ 38, 65. His does not raise an ineffective assistance of counsel claim here, but, because Kelly is proceeding pro se and a successful ineffective assistance of direct appeal counsel claim could constitute cause and prejudice, the Court briefly considers these claims as well.

In ground 2, Kelly argues that the trial court erred when it allowed the state to amend the jury instructions to include transferred intent as theory of guilt when the change did not mirror the language in the indictment. Kelly argues that the state also failed to present evidence of his transferred intent, meaning the identity of the "other" person that Kelly intended to kill, and that the State furthered this error when the prosecutor misstated the law of transferred intent to the jury. (Doc. 1 at 6, 23). For background, the original indictment charged first degree murder in three counts, each of which stated that "without lawful justification" defendant discharged a firearm in the direction of Jenni McGruder (1) "with the intent to kill or do great bodily harm to Jenni McGruder," (2) "knowing such act would cause the death of Jenni McGruder," and (3) "knowing such act created a strong probability of death or great bodily harm to Jenni McGruder." At trial, the jury instructions used the same base language but added the phrase "or another" following the reference to Jenni McGruder. *Kelly*, 2025 IL App (4th) 240484-U, ¶ 40. The Illinois Appellate Court found that there was no prejudice for direct appeal's counsel's failure to raise the argument because the underlying claim was meritless. In his reply, (in support of separate claim of ineffective assistance of counsel) Kelly has now conceded that the constructive amendment of the indictment claim is a "flawed legal theory." (Doc. 18 at 3 (noting that trial counsel incorrectly "framed the objection [to the jury instructions] as a 'constructive amendment' on the record" and that this caused Kelly to "mistakenly assert that flawed legal theory" in his postconviction petition)). Accordingly, this claim is denied as inexcusably procedurally defaulted.

For ground 5, the Illinois Appellate Court found that Kelly's ineffective assistance on appeal argument was meritless because the "record plainly refutes [Kelly's] arguments about Walton's purported bias." *Kelly*, 2025 IL App (4th) 240484-U, ¶ 65. Under the Sixth and

Fourteen Amendment, "[t]he requirement of an impartial jury is met when 'the prospective juror has given final, unequivocal assurances, deemed credible by the judge, that for purposes of deciding the case, she can set aside any opinion she might hold, relinquish her prior beliefs, or lay aside her biases or her prejudicial personal experiences.' " *United States v. Hill,* 153 F.4th 595, 598 (7th Cir. 2025) (quoting *United States v. Taylor*, 777 F.3d 434, 441 (7th Cir. 2015). Here the Illinois Appellate Court examined the record and found:

> Although Walton initially stated that she was not sure that she could put aside what she had read or heard about the case, she went on to state that she "could be fair" and "could be open minded" about the case. Moreover, when asked by the trial court whether she could set aside what she had read or hear about the case and render a verdict—guilty or not guilty—in accordance with the evidence, she answered, "Yes."

*Kelly*, 2025 IL App (4th) 240484-U, ¶ 65. While the juror initially had some reservations, she clearly said she would put aside any prior beliefs or biases she may have had. Accordingly, the Court easily finds the Illinois Appellate Court's decision that the underlying claim (ground 5 here) is meritless is owed deference.

Unlike ground 2 and 5, in grounds 3, 4, and 6, Kelly did not claim here or in his state postconviction petition that direct appeal counsel was ineffective for failing to raise these grounds on direct appeal and the Illinois Appellate Court did not consider the merits of these arguments in any way when finding them forfeited. Nor does the Court discern any other possible ground to excuse Kelly's procedural default. Accordingly, the Court finds grounds 2, 3, 4, 5, and 6 are inexcusably procedurally defaulted.

**D. Ground 7 (Failure to Sever UPWF Charges) is Noncognizable and Procedurally defaulted.**

In ground 7, Kelly argues that the trial court erred when it failed to sever UPWF charges from his first degree murder charges. Both here and in his direct appeal, Kelly has presented this

as a state law claim, arguing that the trial court abused its discretion by not severing the counts and that severance was warranted under Illinois caselaw because there was "'significant risk'" the jury would consider evidence of his prior conviction in determining his guilt for murder. *See* Doc. 17-1 at 23–25; Doc. 17-5 at 13–18. Accordingly, as a state law claim, it is not cognizable in federal habeas review. *Estelle*, 502 U.S. at 67–68. And to the extent that the claim has any constitutional basis, it is procedurally defaulted because Kelly failed to raise it through one complete round of state court review.

Further, even if the Kelly had raised a federal claim, the Illinois Appellate Court determined that Kelly had forfeited the claim because he had not moved for a severance of the charges. *Kelly*, 2022 IL App (3d) 190375-U, ¶ 36. Accordingly, it would be dismissed for the independent and adequate state law ground of forfeiture. *Sturgeon v. Chandler*, 552 F.3d 604, 611 (7th Cir. 2009). Accordingly, ground 7 is dismissed as noncognizable and procedurally defaulted.

**E. Ground 8(a) (*Apprendi* Violation) Is Procedurally Defaulted and Meritless.**

Kelly also raised ground 8(a) on direct appeal, arguing that the sentencing court erred by imposing a 25-year mandatory firearm enhancement due to Kelly personally discharging a firearm where the jury was only asked to determined whether he was armed with a firearm, which only authorizes a 15-year enhancement. *People v. Kelly*, 2022 IL App (3d) 190375-U, ¶A 57. Kelly argued that this violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000). In *Apprendi*, the Supreme Court held that due process requires that any fact that increases the penalty for a state crime beyond the statutory maximum, other than a prior conviction, must be submitted to the factfinder at trial and the factfinder must find that the prosecution proved the sentence-increasing factor beyond a reasonable doubt. 530 U.S. at 490;

While Kelly conceded on direct appeal that this error was forfeited because he failed to object, he argued it could be corrected as "plain error." *Id.* Since the claim was forfeited, it is now barred from federal review as procedurally defaulted for adequate and independent state law grounds. *Sturgeon v. Chandler*, 552 F.3d 604, 611 (7th Cir. 2009). While the Illinois Appellate Court conducted a plain error review, "where a state court reviews a federal constitutional claim for plain error because of a state procedural bar (here, the doctrine of waiver), that limited review does not constitute a decision on the merits." *Kaczmarek v. Rednour*, 627 F.3d 586, 592 (7th Cir. 2010)

Moreover, even if not procedurally defaulted, the Illinois Appellate Court's decision on the lack of plain error is owed deference. The Illinois Appellate Court, did not agree that an *Apprendi* error had necessarily occurred because the jury had found Kelly "guilty of aggravated discharge of a firearm, which necessarily required the jury to find beyond a reasonable doubt that defendant knowingly discharged a firearm. *Kelly*, 2022 IL App (3d) 190375-U, ¶ 59 (citing 720 ILCS 5/24-1.2(a)(2)). And, even if an error had occurred "the evidence regarding whether defendant personally discharged a firearm is not close. Three witnesses testified that defendant discharged a firearm, and none of the witnesses testified that they observed any other individual with a firearm at the time of the shooting." *Id.* The Court agrees with the Illinois Appellate Court's analysis. Ac

**F. Ground 8(b) (Sentencing Challenges) Is Noncognizable and Procedurally Defaulted.**

Finally, Kelly argues that the trial court "improperly used" certain aggravating factors and imposed a sentence that was excessive for a reckless act. (Doc. 1 at 17). As argued on direct appeal, Kelly's claim only raised state law claims. Specifically, on direct appeal in

relation to aggravating factors, he argued that the Court violated Illinois' "double-enhancement rule" when sentencing for UPWF because the court took into consideration his prior felony conviction for unlawful possession of a controlled substance and his murder charge. *Kelly*, 2022 IL App (3d) 190375-U, ¶ 61. However, not only did the Illinois Appellate Court find these claims forfeited, these claims both involve only state law violation, so are not cognizable on federal review. *See* 28 U.S.C. 2254(a). Kelly also argued on direct appeal that his sentence was excessive, but only raised the claim pursuant to Illinois Constitution's proportionate penalties clause. *Id.* Again, as a state law claim, it is noncognizable in federal review.

Moreover, to the extent that Kelly now seeks to argue an Eighth Amendment excessive sentence claim or other federal constitutional claim regarding his sentence, such a claim is now procedurally defaulted because he never presented those claims to the state courts for review.

**G. Additional Ground for Relief from Reply is Noncognizable, Procedurally Defaulted, and Untimely.**

Finally, in his reply brief, Kelly brings a new claim rather than pursuing any arguments in support of the claims he already brought. Liberally interpreting his reply as seeking to amend his petition, the Court denies the request as the claim is both noncognizable and procedurally defaulted, and untimely. Kelly's new claim is a "constitutional challenge concerning Illinois Pattern Instruction Criminal 7.02 [and] the denial of separate murder verdict sheets." (Doc. 18 at 1). He argues that there should have been separate verdict sheets for intentional murder and knowing murder. *Id.* at 2. Kelly relies on the Illinois state law case of *People v. Smith*, 233 Ill. 2d 1 (2009), which he argues stands for the proposition that "denying separate verdict sheets over defense objection is mandatory reversal." *Id.* It does not appear this case applies, however, because Kelly only argue that his counsel included this argument in a motion for new trial, and

did not preserve the claim during trial. Regardless, other than using the word "constitutional" Kelly identifies no federal basis for this claim, instead relying only on state law, making the claim noncognizable in federal review. *See* 28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 67–68.

Moreover, as Kelly concedes, he did not raise this claim through three rounds of state court review. Kelly argues, however, that he has cause and prejudice for the default. Kelly argues that his direct appeal counsel was ineffective for failing to raise the separate verdict sheet issue which trial counsel had preserved in a motion for a new trial. (Doc. 19 at 2). He argues that his trial counsel was ineffective because he incorrectly "framed the objection as a 'constructive amendment' on the record" and that this caused Kelly to "mistakenly assert that flawed legal theory" in his postconviction petition. *Id.* at 3. Then, Kelly argues that his postconviction appeal counsel was ineffective for not noticing that Kelly should have raised a different ground and instead filing a motion to withdraw. *Id.* As explained above, however, Kelly had no constitutional right to postconviction counsel, so errors of postconviction counsel that led to the default of "claims in state court cannot constitute cause to excuse the default in federal habeas." *Coleman,* 501 U.S. at 757. So, while the Court does not decide whether Kelly has established cause for failing to raise the claim on direct appeal, he has not established any cause for failing to raise the claim in his state postconviction motion.

Finally, the claim is untimely. A one-year statute of limitations applies to federal habeas petitions challenging state court convictions. *See* 28 U.S.C. § 2244(d). The limitations period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*See* 28 U.S.C. § 2244(d)(1).

The limitations period is ordinarily calculated under § 2244(d)(1)(A). *Mayle v. Felix*, 545 U.S. 644, 662 (2005). Under subsection (A), the relevant "judgment" is the date on which the conviction and sentence become final. *See Burton v. Stewart*, 549 U.S. 147, 156-57 (2007). However, the statute of limitations is tolled during the pendency of a properly filed application for state postconviction relief. *See* 28 U.S.C. § 2244(d)(2).

Here, Kelly's direct appeal PLA was denied on March 29, 2023. His conviction became final 90 days later, on June 27, 2023, when his time to file a petition for writ of certiorari to the Supreme Court of the United States expired. *See Jimenez v. Quarterman*, 555 U.S. 113, 119–20 (2009) (conviction becomes final for purposes of § 2244(d)(1)(A) when time for seeking certiorari in Supreme Court expires if no petition is filed); S. Ct. R. 13 (90 days to seek certiorari in Supreme Court). After 182 days passed, Kelly filed a state postconviction petition on December 26, 2023, which tolled the limitations period. *See* U.S.C. § 2244(d)(1)(A). The limitations period remained tolled until the Illinois Appellate Court denied his postconviction appeal on November 26, 2025. *See Patterson v. Adkins*, 124 F. 4th 1035, 1045 (7th Cir. 2025) (limitations clock restarts when appellate court issues decision if petitioner does not file PLA); *see also Lawrence v. Florida*, 549 U.S. 327, 333-34 (2007) (statutory tolling ends when state postconviction proceedings conclude). At this time, Kelly had 185 days left on the clock to file his federal habeas claims, or until May 30, 2026.

Kelly filed his original petition on February 24, 2026, well within this deadline. However, Kelly did not raise this claim—which is unrelated to his original claims—until his reply brief was filed on August 26, 2026, making it untimely. *Mayle*, 545 U.S. at 650 (An amended petition "does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth."). Accordingly, the Court finds his claim is inexcusably procedurally defaulted, not cognizable in a habeas proceeding, and untimely.

## IV. CERTIFICATE OF APPEALABILITY

Should Kelly wish to appeal this decision, he must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where a claim is resolved on procedural grounds, a certificate of appealability should issue only if reasonable jurists could disagree about the merits of the underlying constitutional claim *and* about whether the procedural ruling was correct. *Flores-Ramirez v. Foster*, 811 F.3d 861, 865 (7th Cir. 2016). The Court does not find reasonable jurists could disagree that Kelly's claims are either procedurally defaulted, not cognizable in federal review, or entitled to deference under 28 U.S.C. § 2254(d). Accordingly, the Court declines to issue a certificate of appealability.

## V. CONCLUSION

For the reasons above, the Court DIMISSES Petitioner Jonathan Kelly's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) with prejudice, and DENIES Petitioner's Motion to Stay (Doc. 19). The Court DECLINES to issue a certificate of appealability.

The Clerk is DIRECTED to substitute Justin Mayer for Brittany Greene as Respondent.

The Clerk is further DIRECTED to issue judgment in favor of Respondent and CLOSE the case.

Signed on this 2nd day of November 2026.

/s/ Sara Darrow
Sara Darrow
United States District Judge